## City of Chicago v. Leona B. Hutchinson.

### Gen. No. 12,787.

1. Sidewalk—*when municipality not liable for injury resulting from snow and ice upon.* A municipal corporation is not an insurer of pedestrians on its sidewalks against accidents, and even if a sidewalk is covered with snow and ice it is not liable for an injury resulting therefrom, unless such snow and ice had accumulated thereon for such a length of time that the municipality by the exercise of reasonable care could have had notice of and removed the same; nor would a municipality be liable if the accumulation was not of a nature to obstruct travel or prevent its being reasonably safe.

2. Photograph—*when limitation of competency of, as evidence erroneous.* It is error for the court to exclude from the jury the consideration of a photograph which has been admitted for the purpose of showing the general surroundings of the place of the accident, where, after its admission, evidence is offered which tends to show that it was a correct representation of the place of the accident at the time thereof.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. Homer Abbott, Judge, presiding. Heard in this court at the October term, 1905. Reversed and remanded. Opinion filed October 29, 1906.

John F. Smulski, for appellant; Edward C. Fitch and Robert S. Cook, of counsel.

G. M. Bagly, for appellee.

Mr. Presiding Justice Brown delivered the opinion of the court.

This appeal is by the City of Chicago, defendant below, from a judgment of the Circuit Court of Cook county rendered against it in favor of one Leona B. Hutchinson, plaintiff below. The judgment was for $1,200. It was rendered on the verdict of a jury for personal injuries suffered by the plaintiff through a fall on the sidewalk opposite number 358 West Madison street in Chicago. The accident occurred March 18, 1900, at about half past seven o'clock in the evening.

The plaintiff fell while passing along the sidewalk and suffered a severe injury to her right leg. There was evidence at the trial tending to prove that there was an impacted fracture of the head of the femur. The injury was at all events painful and has resulted, according to the testimony of her attending physician, after confinement to her bed for ten weeks and the use of crutches for some months thereafter, in a permanent shortening of the leg about three-quarters of an inch, and an eversion of the foot.

The fall appears from the evidence to have been the result of slipping on ice or snow on the sidewalk. It is not disputed that the sidewalk was slippery, but its exact condition is a subject on which the parties to the litigation widely differ.

The defendant claims that although the walk was slippery, such slipperiness and consequent danger came altogether from a "little scum of ice on the stone sidewalk"—"a little shell of ice"—"just the frost crusted over the walk." It produced witnesses to this. There was also evidence that the weather had been such as would have produced such conditions a short time before the accident. The superintendent of the weather bureau testified that "On the 18th the highest temperature was 42° F., and the lowest 24°, with some snow early in the morning and some rain in the afternoon—.03 inch melted snow—that is, rain and snow." Other witnesses testified that it had been drizzling and sleeting and freezing a little that afternoon and evening.

While this condition of things might well be sufficient to account for the fall of the plaintiff, it is evident that if the fall was the result of this condition of things alone, the defendant city cannot be held liable. The city is not an insurer of pedestrians on its sidewalks against accident, and, as the jury were rightly instructed in this case, even if the sidewalks were covered with ice and snow, if such ice and snow had not

accumulated for such a length of time that the city by the exercise of reasonable care could have had notice of and removed the same, or if such accumulation was not of a nature to obstruct travel or prevent its being reasonably safe, then the city would not be liable for the fall of the plaintiff caused by slipping on the ice.

The soundness of this legal position is apparently admitted by the plaintiff, who places her claim against the city on a very different basis.

She claims that on the sidewalk, forming a dangerous obstruction to travel and causing her fall, there was on the evening in question, and had been for several days, a ridge or pile of snow and ice at least eight inches thick near the center of the walk, growing thicker or higher towards the south edge of the sidewalk and diminishing in such thickness as it approached the northern edge or street curb.

She produced several witnesses whose testimony was positive that such a pile or ridge of snow and ice existed. This alleged fact was as categorically denied by witnesses for the defendant, who claimed to be equally conversant with the locality at the time of the accident.

The testimony on this material point was, then, directly contradictory, and it was very important that the jury should be given all the light which could properly, under the legal rules of evidence, be thrown upon it by either party.

The principal objection made in this appeal to the judgment is that certain competent evidence bearing on this question was excluded from the jury. Such exclusion was made a ground for a motion for a new trial, which was denied, and together with said denial is assigned for error in this court.

It is indeed also urged that the weight of the evidence that was admitted is against the verdict. This is insisted upon three grounds: First, that the weight of such evidence is against the existence of any pile,

ridge, or obstruction of snow and ice; second, that the evidence shows, in any event, contributory negligence on the part of the plaintiff; and, third, that the evidence at least—if the existence of the pile or ridge of ice be admitted—shows that it was not a dangerous obstruction to travel, for the non-removal of which the defendant is liable.

As the judgment must be reversed because of the improper rulings of the trial judge in excluding evidence, it is possible that the case will be again tried under conditions enlightening the jury more clearly on these questions, which seem to us more proper for their consideration than ours. Therefore we deem it better to avoid their discussion in this opinion. It is sufficient to say that we do not think the court erred in refusing to take the case from the jury. There was evidence offered for the plaintiff that tended to support her case, and to negative contributory negligence. Of its weight absolutely or as compared with the evidence offered for the defendant, we express no opinion.

Early in the trial a photograph was shown by the defendant's counsel to a witness for the plaintiff, and he was asked whether it was a correct representation of the locality of the accident at the time of the accident. He answered that it was, except "that there didn't seem to be the snow there." The photograph was then marked as a Defendant's Exhibit for identification.

The first witness called for the defendant was the photographer who took the picture. He testified that it was a correct representation of the sidewalk in front of 358 West Madison street on March 21, 1900, at 3 o'clock in the afternoon. The photograph was then offered in evidence "for all purposes," and on objection by the plaintiff excluded by the court. To this ruling there was an exception. The photograph was then offered in evidence "for the purpose of showing the general surroundings of the place in question, but not as showing the conditions of snow and ice at the

time of the accident.'' An objection made to this offer by the plaintiff was then overruled, and for this purpose only and with this express limitation of its effect made by the court, evidently in the presence and for the direction of the jury, it was admitted.

No promise appears then to have been made to show that the ice and snow conditions had not' changed between March 18th at 7:30 P. M., the time of the accident, and March 21st, at 3 P. M., when the picture was taken, and it must therefore be conceded that the court did not err in refusing the ' original offer, or in, at this time, limiting the effect of the photograph. But afterward, in the very evident and apparent attempt to make the photograph competent for all'purposes, by showing that no change had taken place in the ice and snow conditions between the time of the accident and the taking of the picture, various offers of evidence were made by the defendant and refused. Thus, Prof. Cox of the weather bureau was offered as a witness to show that between 7:30 P. M. on March 18th, and 6 P. M. on March 21st, the temperature was not below the freezing point and could not have allowed the natural melting of such a snow or ice ridge or pile as plaintiff's witnesses had described. Upon cross-examination of one of these witnesses, Canty, he had been asked if the snow or ice which he described was shoveled off during the week after the accident.

James Gardiner, the police officer on the beat, who saw the accident and was of course frequently passing and repassing the place, Matthew Sullivan, the police officer who came for the injured woman with the patrol wagon, Belle Cook, the woman who lived in the house at 358 West Madison street, and John Herman, who was in business in the basement of 356 West Madison street, were all asked, in slightly different forms, whether the photograph represented correctly the conditions of ice and snow on the sidewalk that existed at the time of the accident. Had these questions to Cox, Canty, Gardiner, Sullivan, Cook and Herman been an-

swered, the answers might have tended to show that neither by natural or artificial causes had snow and ice which were upon the walk on the evening of March 18th been removed within the three following days, and also that the photograph was a correct representation of the conditions existing at the locality in question as well on March 18th as on March 21st. The limitation as to its effect might then properly have been removed at the request of the defendant. All the questions indicated were ruled to be improper and their answers thereby forbidden. We think this was error. It is urged that the matter dealing, as it did, with a photographic · representation, was entirely within the discretion of the court. If it were, we should be obliged, under the circumstances of this case, to hold it an abuse of that discretion to withhold from the jury such vitally important testimony upon this pivotal point. The trial judge does not seem, however, to have placed his ruling on the motion for a new trial on the rightfulness of excluding this evidence. When the point was made that the exclusion of the picture to show ice and snow conditions was erroneous, he seemed to have remembered only that the picture was admitted in evidence, and to have forgotten the line of distinction he had drawn as to its legitimate effect. When his memory was refreshed he expressed his assent to the proposition of the counsel for the plaintiff that despite the direction to the jury to disregard the condition of ice and snow disclosed on the walk by the photograph, the whole picture was before them for all practical purposes, and ''they might look at the snow and ice on the sidewalk.''

But this is clearly an inadmissible manner of treating the erroneous ruling, if it were erroneous.

The jury were expressly directed not to regard the photograph as evidence of the condition of the ice and snow on March 18th, and might well have formed the opinion that the court intended to imply that it was unlikely to have been a correct representation of it,

and they were moreover prevented by the subsequent rulings of the court from hearing witnesses testify that it was such a correct representation.

Counsel for appellee urge that this question of erroneous rulings upon evidence is not open for our consideration, because there was no exception taken to the overruling of the motion for a new trial. The manifest answer to this is, that the record under the hand and seal of the trial judge shows that an exception was taken to the said ruling. We do not think it necessary to follow counsel into the discussion of the irregular method of making up the last few pages of the bill of exceptions. The certificate of the trial judge to the exception to his denial of the motion for a new trial is certainly conclusive.

The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*